SHARP, Chief Judge.
This is an appeal from a final judgment of foreclosure entered against the McCour-rys, defendants below, in favor of the co-mortgagee, Beneficial Savings Bank (“Beneficial”). We reverse.
The McCourrys owned a residence which they sold for $270,000 to Paul West, president of Freedom Mortgage Group, Inc. (“Freedom”). At the closing, West executed a note and mortgage, securing payment of the full sales amount. The note provided for a series of 120 monthly payments at 9.9% interest, to be followed by a series of 240 monthly payments at 11.9% interest.
Contemporaneously with the execution of the note and mortgage, the McCourrys entered into a lease agreement with West to rent their former residence for six months at a total rental cost of $14,000. They also executed a purchase agreement (the “McCourry purchase agreement”), which assigned the first 120 monthly mortgage payments to Freedom. The McCourrys sold this right for $100,000, less $2,000 closing costs and the $14,000 rental cost. They retained the right to collect the last 240 monthly mortgage payments, and a corresponding interest in this mortgage deed. This document contained no express subordination of the McCourry’s interest in the note and mortgage to Freedom.
That same day Freedom assigned the interest received by it from the McCourry purchase agreement to Beneficial in a separate agreement (the “Beneficial purchase agreement”) for $140,000. Beneficial knew of the financing arrangement with the McCourrys, but they did not know of its assigned interest. Pursuant to the agreement between Freedom and Beneficial, Beneficial had the right to foreclose the mortgage, should default occur on the 120 monthly mortgage payments, and it was given priority over Freedom in the event of a foreclosure. However, this provision was not binding on the McCourrys. Six months after closing, West defaulted on the note and Beneficial brought these foreclosure proceedings.
The mortgage contained a standard acceleration provision:
If default be made in the payment of any of the sums or interest mentioned herein or in said mortgage, or in the performance of any of the agreements contained herein or in said mortgage, then the entire principal sum and accrued interest shall at the option of the holder hereof become at once due and collectible without notice, time being of the essence; and said principal sum and accrued interest shall both bear interest from such time until paid at the highest rate allowable under the Laws of the State of Florida. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default, (emphasis added)
When Beneficial brought the foreclosure action, the entire amount, not just Beneficial’s interest became due and owing. At this point, the McCourrys and Beneficial *983 were co-mortgagees. Each owned only a portion of the same note and mortgage which secured the same property. Both should have been treated as plaintiffs. Beneficial’s interest was one-third; while the McCourry’s interest was two-thirds.
There is no provision in the documents binding on the McCourrys as to relative priority of the two mortgagees’ interests. Priority between holders of notes secured by the same mortgage is governed by equitable principles. 37 Fla. Jur.2d Mortgages, § 135 at 124 (1982). Two mortgages that are given on the same property at the same time, though to different persons, to secure the payment of debts having no priority are, generally, equal in lien in the absence of an express stipulation. 37 Fla.Jur.2d Mortgages § 142 at 130 (1982).
Although there is only one note involved in this case, the rule of law pertaining to a series of notes payable at different periods, might be applicable by analogy. In the situation where there is a series of notes with successive due dates the holder of the first one which comes due has the right to be satisfied first out of the mortgaged property, unless there is some peculiar equity attached to the notes of subsequent dates, (emphasis added) Miami Oil Co. v. Florida Discount Corp., 102 Fla. 209, 135 So. 845 (1931); Wright v. Merdes, 98 Fla. 859, 124 So. 448 (1929); Kissimmee Everglades Land Co. v. Carr, 88 Fla. 387, 102 So. 335 (1924). In this case such peculiar equities were clearly established.
The final judgment specifically found that “the actions of PAUL S. WEST and FREEDOM MORTGAGE GROUP, INC. were fraudulent,” at least to the extent that Freedom retained an undisclosed $40,-000 profit upon transferring its interest to the 120 monthly payments to Beneficial. The record contains overwhelming evidence of fraud and misrepresentation by West and Freedom to the McCourrys.
Beneficial argues that even if there were fraud between West and Freedom towards the McCourrys, such conduct cannot be laid at its feet because it is a holder in due course. However, Beneficial cannot be a holder in due course because testimony of one of its assistant vice presidents reveals that Beneficial was well aware of the nature of the transaction between West, Freedom and the McCourrys.[1] Moreover, a purchaser of a limited interest can only be a holder in due course to the extent of the interest purchased. § 673.302(4), Fla.Stat. (1983).
Based on the trial judge’s findings, we conclude that the equities are with the McCourrys. They were the only parties to this complex and involved transaction who did not know its true nature.[2] Accordingly, we reverse this case and remand with directions that the parties share, pro rata as mortgagees in the foreclosure.
REVERSED and REMANDED with directions.
DAUKSCH and COWART, JJ., concur.

. A holder in due course must take in good faith. § 673.302(l)(b), Fla.Stat. (1983).

. For example, there was testimony that the McCourrys believed the McCourry purchase agreement was to be sold to Atlanta investors, and that they believed no loss of their retained 240 monthly mortgage payments was possible.